129 | 15
34 SC '173

APPEAL OF JOHN W. MADORE ET AL.

[JOHN W. MADORE ET AL. v. G. N. HORN.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF
BEDFORD COUNTY, IN EQUITY.

Argued May 14, 1889—Decided May 27, 1889.
Re-argument refused October 14, 1889.
[To be reported.]

1. The language of a deed poll, conveying a lot of ground, to wit : "The said piece of ground to be used for milling or manufacturing purposes only," is not a covenant, expressed or implied, that the grantee would erect a mill of any kind upon the property.

2. There being no averment of fraud, accident, or mistake, in the execution and delivery of the deed, and no attempt to re-form it, the previous understanding of the parties, if there was one, was merged in the deed, and a bill to restrain the use of the lot for other purposes than those expressed will be dismissed.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 342 January Term 1889, Sup. Ct.; court below, No. 1 April Term 1885, C. P. in Equity.

On February 16, 1885, John W. Madore, trustee, and John W. Madore, John Wilhelm, William M. Hall, James C. Devore and Michael Carpenter filed a bill in equity against G. Newton Horn, praying, upon the grounds of relief therein set forth, relating to the conveyance by the plaintiffs to the defendant of a certain lot with water-power and water privileges, by deed dated May 10, 1883, duly delivered and recorded,

1. That the defendant be restrained and enjoined from using the said lot for any other purpose than for a mill, or, in lieu thereof, some other manufactory with water-power.

2. That he be required to remove said building he has erected thereon.

3. That he be specially enjoined and restricted from using said building for a printing office and place of residence, and

the said lot, in connection with the B. & O. Railroad, as a coal yard or place for unloading coal.

4. That he be required to erect a mill on said lot, or other manufactory in lieu thereof.

5. That he be ordered, adjudged, and decreed to pay to plaintiffs such compensation in damages as will recompense them for his use of the lot in violation of the limitation of the deed, and for the non-erection of a mill or other manufactory thereon.

And for such other and further order and relief, etc.

The cause having been put at issue by answer and replication, it was referred to *Mr. Alexander King*, as examiner and master, who subsequently filed a report with the following findings of fact:

1. On March 12, 1883, the plaintiffs, John W. Madore, John Wilhelm, William M. Hall, James C. Devore, and Michael Carpenter, composed a company called the Bridgeport Land Association, and were the owners of a body of land in and adjoining the borough of Hyndman, Bedford county, which had been by them laid out in town lots and outlots. On that day they entered into an article of agreement, in writing, with the defendant, G. Newton Horn, to sell and convey to him a certain "mill seat" for the consideration of $500, which is described in the agreement as follows, viz.: "The above mill or manufacturing seat is more fully described as follows: Commencing at post corner on George's street and running N. W. with George's street 125 feet to line of B. & O. Railroad; thence in a northern direction along line of said railroad to a point near the railroad culvert; then in an eastern direction across the race to bank about 60 feet; then down along bank to place of beginning; the deed for above to be in fee simple, and to be used only for milling or manufacturing purposes."

2. A deed for said piece or lot of ground was executed and delivered to said G. Newton Horn on May 10, 1883, and recorded. This deed describes the lines definitely and contains the following clause: " The said piece of ground to be used for milling and manufacturing purposes only, and party of the first part shall also be allowed to erect a dam in Will's creek near the Peerless Lime Co.'s quarry, and divert as much water from said creek as may be necessary to run a mill or manu-

factory that may be erected thereon; and shall have the right to clean out channel below said piece of ground, so as to allow a free flow of water from tail race, and prevent back water. In case the dam is so erected in Will's creek as to divert all the water from said creek, grantors reserve the right to a two-inch flow of water from race or creek above dam; but if the water of said creek is not all diverted, whatever water is needed by said grantors or their assigns it shall be taken from a point below the dam." It was evidently intended that the party of second part should have this right.

3. There is a natural water-course extending from Will's creek, at or near the point above mentioned, which is suitable for a mill race, extending over other lands of the grantors to and over the lot conveyed and on below it over grantors' lands.

4. The defendant, G. Newton Horn, accepted the deed, had it placed on record, and took actual possession of the lot, under this conveyance, on May 10, 1883, and has been and is still in possession of it.

5. A short time after said purchase, the defendant, at a cost of about $1,200 erected a two-story frame building on said lot, at the corner of the intersection of the B. & O. Railroad and George's street, which said building was intended for a chair manufactory, but was never so used. It was used for a dwelling-house and printing office, for a short time, and since has been used and occupied as a store and dwelling-house.

6. On another part of this lot the defendant has a coal-yard and coal-tipple along the B. & O. Railroad. A portion of this coal-yard or tipple is on the right of way of the said railroad, and part on the lot in controversy. It is used in connection with the lot, and could not be operated as a coal-yard, except in connection with the lot.

7. From the time of the purchase, up to the time of the institution of this suit, the defendant did not use this lot for milling or manufacturing purposes, but used it for a store-house, dwelling-house, printing office, and coal-yard.

8. After the purchase of this lot, the defendant purchased a mill in the upper part of the town of Hyndman; or rather, he took back from a man named Samuel Hendrickson a mill property he had sold to him previous to the purchase of this lot.

He took it back for the reason that Mr. Hendrickson was unable to pay for it.

9. The title to the water-right, as sold to the defendant, was in the plaintiffs at the time they made the conveyance. The calls in the old surveys, and the marks upon the ground that under the evidence were there a number of years ago, fix the line of the plaintiffs' property on the north or Evans side of Will's creek, so that Jacob Evans had no title to any part of Will's creek. Even if this were not so, the conveyance from Jacob Evans to the Bridgeport Land Company, dated August 28, 1878, recorded, gives to the plaintiffs the right to divert all the water from Will's creek. The evidence produced to show that this conveyance from said Jacob Evans to the said land company was fraudulent and without consideration, falls far short of establishing such fact.

10. The evidence produced to establish an outstanding title in Cornelius Devore's heirs to that part of the land owned by the said plaintiffs, over or through which the water of Will's creek would have to be carried to reach the lot conveyed to said defendant, is entirely too vague and indefinite to show a title better than plaintiffs. If any such outstanding title exists, the evidence fails to show it.

Upon the facts so found by him, the master reported as follows:

Under the foregoing statement of facts the material question raised is, Does the clause in the deed above recited create an estate upon condition? Or, is it a mere limitation of the use which the grantee shall make of the property,—a naked prohibition, inconsistent with the title conveyed and therefore void?

Unless it is an estate upon condition, the plaintiffs' case is without foundation. If not clearly expressed, but the intention of the parties that it was to be an estate upon condition can be gathered from the whole paper, then it is enforceable in a court of equity, and the defendant should be restrained in any use of the property, other than for milling or manufacturing purposes and the uses necessarily and reasonably connected therewith. In a proceeding in the common law form, it would be necessary to inquire into the form in which

the right is reserved, in order to decide whether it should be sued for as a condition, or as a simple contract or covenant; but in the equity form of proceeding it is the substantial element, the intention of the parties, that is inquired into.

It is very evident from the article of agreement and the deed, that the grantors intended to sell the lot for a mill or other manufactory, and it is just as evident that the grantee purchased it for that express purpose and intended to use it for such purpose only. The language is: " The said piece of ground to be used for milling or manufacturing purposes only." If this has any meaning, it is that the grantors conveyed the lot upon the condition that the grantee use it for milling or manufacturing purposes only. Without such construction the language of the clause is without meaning. It was put there for some purpose, surely, and the only reasonable or common sense purpose that can be ascribed is, that it was upon the condition that the grantee use the property so conveyed for the sole purpose of milling or other manufacturing purposes. It is very clear that such was the intention of the parties, and that this was the condition upon which the grant was made. The bill of the plaintiffs alleges it, and the answer of the defendant admits it; and he further says, " that he still intends to do so at such time as will suit his purposes."

This was not a reservation, for the grantors have not reserved anything out of that which they before granted. Nor is it an exception, for that is always a portion of the thing granted and can be enjoyed separately from the thing granted.

An estate upon condition is such whose existence depends upon the happening or not happening of some uncertain event, whereby the estate may be originally created, enlarged, or finally defeated; a condition being a qualification or restriction annexed to a conveyance and so connected with it in the deed as to qualify or restrain it. This, then, could only be an estate upon condition subsequent. It is not very clearly expressed, but taking the whole instrument together, I think the clear implication is, that the parties intended to create an estate upon condition.

Has there been a breach of the condition? No time being specified in the deed for the performance of the condition, it must be complied with in a reasonable time. Has the defend-

ant had such reasonable time? The deed was made and delivered on May 10, 1883. This suit was instituted on February 16, 1885. Thus, the defendant has had a period of less than two years to comply with or perform the condition. He made no visible efforts to comply with it in that time. Yet if he had not used the property for other purposes, I am of the opinion that a court of equity would not compel him to proceed to erect a mill or manufactory within that period, nor would such non-compliance work a forfeiture of the estate.

I do not understand that the plaintiffs seek a forfeiture. The prayer for relief is that he be restrained from using the property for other purposes than that of milling or manufacturing. This prayer should be granted and a decree entered restraining the defendant from using the land for a coal-yard. But inasmuch as he has erected a steam grist-mill on the property since the beginning of this suit, I cannot see that he should be compelled to remove the building used for a store and dwelling-house. He might very consistently with the terms of the deed have a dwelling and store on the property, and having such, in connection with a mill or manufactory, would not be a breach of the condition.

The condition having been broken by the defendant, he should be adjudged to pay some amount in damages; but in view of the fact that less than two years expired from the date of the deed until the bringing of the suit, and the further fact that the evidence does not show any actual, direct damages to the plaintiffs by reason of such breach, the amount should be small; and the master deems it proper, under the circumstances of the case, that the defendant be adjudged to pay the sum of fifty dollars to the plaintiffs, and the costs of this proceeding; and as this arises from the breach of the condition upon which he holds title to the land, the decree should be so entered that the defendant's title remains subject to the payment of said damages and costs.

The plaintiffs' counsel have requested the master to find and report, among other matters, the following:

"That if there is any ambiguity in the deed, the parol evidence of J. W. Madore and William M. Hall, and the letter of defendant dated and marked E, establish the fact that the defendant was to forthwith erect a grist-mill to be run by water-

power, with the right to convert it into some other manufactory in which water-power would be used, if the future made that change desirable."

"That the plaintiffs have a right to the flow of water through the defendant's lot, so as to use it on their land below, the same as if the defendant had erected a grist-mill and run the same by water-power on the lot conveyed to him; and they are entitled to a decree by which they can turn the water down through the lot of the defendant and use it on their land below, where, the evidence shows, they have a seat or seats for other manufacturing establishments."

The evidence does not satisfy the master that there was any such contemporaneous parol agreement between the parties, at the time of the purchase and acceptance of the deed for the land by the defendant, that would sustain such finding. I cannot see how the conversations and parol agreements of the parties, when negotiations were going on in 1880, can be part of and contemporaneous with the contract and sale made in 1883. That the defendant bought the lot for the purpose of erecting a mill or other manufactory has already been found; but the kind of mill or manufactory, or that he was to use water-power and divert the water from Will's creek and use it for such mill or manufactory, and so divert it that the plaintiffs would have the use of it below, is not established. He has the right to so use the water if he sees proper to do so, and otherwise conforms to the terms of his deed; but the evidence does not show that it was compulsory upon him.

To the foregoing report, a large number of exceptions were filed by both the plaintiffs and the defendant. These exceptions were overruled by the master and then renewed in court. After argument thereof, the court, BAER, P. J., on January 28, 1889, filed the following opinion and decree:

This cause came on to be heard on exceptions to the report of the master, and was ably argued by counsel.

The learned master has presented his report in a form to be commended. His finding of facts is as concisely and tersely stated as the facts warranted, and his opinion on the facts found and authorities presented to him is able. He holds that the main question in the case is, Does the clause in the deed

recited in plaintiffs' bill create an estate on condition? and holds, also, that unless it is an estate on condition, the plaintiffs' case is without foundation.

We entirely concur with the master in this. But notwithstanding his well-considered opinion, we are constrained to differ from him in his finding that the estate is an estate on condition: Wheeler v. Walker, 2 Conn. 196 (7 Am. Dec. 264); Methodist Ch. v. Public Ground Co., 103 Pa. 164; Cook v. Trimble, 9 W. 15; 1 Shars. & B., L. C., 124, 149; Packard v. Ames, 16 Gray 327; Biglow v. Barr, 4 Ohio 358; McKissick v. Pickle, 16 Pa. 140; Clark v. Martin, 49 Pa. 289; Johnson v. Gurly, 52 Tex. 222.

The master, though he held the estate to be a conditional one, nevertheless found damages only. If it is not an estate on condition the remedy for damages, if any, must in our opinion be by an action of law. If it be said the grantee did not seal the deed, and hence could not be sued in covenant for non-performance, the answer would be that if he were liable in covenant in case he had sealed it, he would in Pennsylvania, be liable in assumpsit, though he had not sealed. As we consider the estate is not an estate on condition, the ruling of the case necessarily turns on this point alone, and as a consequence all exceptions inconsistent with this ruling are now dismissed.

And now January 28, 1889, this cause came on for hearing and was fully argued at the last stated argument court, and the court upon due consideration does now order, adjudge, and decree that the bill of the plaintiffs be dismissed at the costs of the plaintiffs, and said costs as reported by the master as to amount are approved.

Thereupon the plaintiffs took this appeal, specifying that the court erred in dismissing the bill at the costs of the plaintiffs.

*Mr. William M. Hall, Jr.*, and *Mr. William M. Hall*, for the appellants:

1. As a general rule, covenants prohibiting the purchaser from the erection of dwellings, or restricting the size or manner of erection, or the purposes for which the premises may be used, will be enforced in equity, by restraining the purchaser or his assigns, having notice, from their violation: Seymour v.

Arguments.

McDonald, 4 Sandf. Ch. 502; Clark v. Martin, 49 Pa. 289; Hills v. Miller, 3 Paige 254 (24 Am. Dec. 218); Trustees v. Cowan, 4 Paige 510; Mann v. Stephens, 15 Sim. 377; Latimer v. Livermore, 72 N. Y. 174; Haswell v. Wright, 8 C. E. Green 389; Kirkpatrick v. Perslime, 9 C. E. Green 206; Stivers v. Dorman, 25 Ohio 580; Palmer v. Graham, 1 Pars. 476; McClurg's App., 58 Pa. 52; St. Andrews Luth. Ch.'s App., 67 Pa. 512; Linzee v. Mixer, 101 Mass. 512; Dorr v. Harrahan, 101 Mass. 531; Fuller v. Ames, 45 Vt. 400; Phœnix Ins. Co. v. Continental Ins. Co., 14 Abb. Pr., N. S., 266; Bagwell v. Davies, 140 Mass. 76; Witney v. Railroad Co., 11 Gray 359; Peck v. Conway, 119 Mass. 546; Barrow v. Richard, 8 Paige 351; Blecker v. Bingham, 3 Paige 246; Trustees of Watertown v. Cowen, 4 Paige 510.

2. Both covenant at law and a bill in equity to restrain, will lie to enforce an agreement not to erect a building of a particular kind. The acceptance of a deed and the enjoyment of the estate estops the person claiming it from denying the covenant even though he has not sealed the deed: Atlantic Dock Co. v. Leavitt, 54 N. Y. 35 (13 Am. Rep. 556); Trustees v. Lynch, 70 N. Y. 440; Rogers v. Eagle Fire Co., 9 Wend. 618; Trotter v. Hughes, 2 Kern. 74; Randall v. Latham, 36 Conn. 38; Thornton v. Tranwell, 39 Ga. 202; Harriman v. Park, 15 N. H. 471; Emerson v. Mowery, 50 N. H. 315; Burbank v. Pillsbury, 48 N. H. 475 (97 Am. Dec. 633). The learned master fell into an error in supposing that our case depended on its being an estate upon condition, and held it was an estate upon condition. The learned court held it was not an estate upon condition, and dismissed the bill. Both overlooked the true state of the case; that it is not put on the ground of being an estate upon condition, and that the bill seeks to enforce a covenant or contract, a negative covenant as it is called, restricting the use to which the grantee could put the lot, which we claim to be our right.

*Mr. John M. Reynolds* (with him *Mr. E. F. Kerr* and *Mr. R. C. McNamara*), for appellee:

1. We confidently maintain that the deed in this case does not create a covenant on the part of the grantee, from the mere fact of his acceptance of the same. It does not purport

to be signed or intended to be signed by both; and the clause in relation to the use of the property can in no sense be termed a covenant on the part of the grantee. Whatever may be the authorities elsewhere, it has long been settled in this state that the mere acceptance of a deed does not create a covenant on the part of the grantee. The authorities presented by plaintiffs holding a different view in other states, have no bearing in determining the question before us: Maule v. Weaver, 7 Pa. 329; Shoenberger v. Hay, 40 Pa. 137.

2. It seems to be conceded by the plaintiffs that, standing on the deed alone, there is no covenant on the part of the grantee, but to aid them they call in the article of agreement between the parties. To this, it may be urged, there are two objections: (1), the remedy is not sought in the bill on the terms of the agreement, but solely by reason of the terms of the deed; and (2), the contract between the parties was terminated and all prior contracts were merged in the deed, which contains substantially the same provisions as those set forth in the agreement, and in such case there is a merger and the deed must speak the contract, the remedy and the rights of the parties: Jones v. Wood, 16 Pa. 25; Shontz v. Brown, 27 Pa. 123; 1 Sugden on Vendors, 327, note y. Moreover, by accepting the deed all prior parol contracts were merged: Gregory v. Griffin, 1 Pa. 208. The case is ruled by Craig v. Wells, 11 N. Y. 315.

3. This court should also refuse the relief prayed for, on other grounds: (1) It does not appear from the bill filed in this case, nor from the proof offered, nor from any finding of the master, that the injury complained of is irreparable. From all that does appear, it is manifest that if the rights of the plaintiffs have been invaded, they have an adequate remedy at law: Clark's App., 62 Pa. 450; Western Union Tel. Co. v. Railroad Co., 9 Phila. 494; Harkinson's App., 78 Pa. 204. (2) There is no allegation in the bill that the defendant has violated any covenant, or that he ever covenanted that the property should be used by him for "milling or manufacturing purposes only." In the absence of such an allegation, plaintiffs have no right to the decree they pray for: Lafferty's App., 20 W. N. 36; 1 High on Inj., § 34; Bispham's Eq., 491.

PER CURIAM:

The learned judge below differed from the master in his construction of the words, "the said piece of ground to be used for milling or manufacturing purposes only," contained in the deed from J. W. Madore et al. to G. Newton Horn. The master held that the words referred to created an estate upon condition; the court, that they did not. We are not called upon to decide which was right, as we think upon the merits the bill was properly dismissed.

The deed contains no covenant to erect a mill of any kind upon the property; the grantee acquired a right to do so, and to make use of the water power. The grantor has no legal cause to complain that his grantee does not exercise all the rights and privileges which he purchased and paid for. And even if a covenant to build a mill could be implied, no time was fixed within which it was to be done. It appears, however, that since the bill was filed the grantee has erected a grist-mill, which was intended to be operated by steam. The appellants object to this and say he should have used the water power. There is nothing in the deed which requires him to do so, and we cannot look elsewhere for it. The previous understanding of the parties, if there was one, must be presumed to have been merged in the deed. There is no averment of fraud, accident, or mistake in its execution. There was no attempt to reform it. It was alleged, however, that the appellee is using the property for other than milling or manufacturing purposes. He did erect a building for manufacturing purposes, but was unable to use it as such. It is now occupied as a store and dwelling-house. If we give the language quoted from the deed the effect of a covenant, we do not regard this as a breach. It must have a reasonable construction. A covenant to use property for manufacturing purposes would imply the right to use it for all purposes incident to such object. There must be a house or houses, for those who operate the establishment to live in, and we cannot say that a store to supply their wants is not germane. The matter of the coal-yard does not require discussion. There was no coal-yard upon the lot. It is true the master finds there was, but in this he was mistaken. The only evidence upon this subject is that of J. W. Madore, one of the plaintiffs, who

said, " I am not certain that any part of Horn's coal-yard proper is on this lot. He gains access to the coal yard and tipple over the lot." Upon the merits the plaintiffs had no case.

The decree is affirmed, and the appeal dismissed at the costs of the appellants.

On October 14, 1889, a motion by the appellants for a re-argument was refused.